Good morning. My name is Matthew Gray of Bingham McCutcheon in San Francisco and I represent the appellant in this case, Juan Gabriel Torres-Rivas. The immigration laws, by design, encourage people like Mr. Torres-Rivas to entrust their cases to their lawyers. The law gives him the right to be represented. It requires that the case be heard and when, and hearings are generally open to the public unless they've been closed. And I don't know how those three things work together for this case. Well, Your Honor, I think neither do we, frankly. Is there some docket sheet or something that says this case is secret? No, not that we know of. And we know of no reason why this case should be secret, nor did prior counsel. And, in fact, when prior counsel phoned the 800 number, which, according to the Executive Office of Immigration Review's website, should include a next hearing date and time, as well as elapsed timelines and clocks for asylum cases, there was this mysterious message that no information would be given on this case. When counsel then proceeded to call the immigration court and speak to a couple of different people, ultimately the deputy administrator, to ask whether any scheduled hearing had been set for Mr. Torres-Rivas. Is there some security thing or something here? I thought it was just about homosexuality. It is. It is, Your Honor. You're right. There's nothing. This is a straightforward asylum claim. There can be no reason that we can think of, certainly none that was requested by us, for any of this information. Well, beyond that, you know, more to the purpose, maybe. What rule or what regulation says that they must give out information over the telephone or commit some sort of legal or constitutional violation? These are the required to send written notice, which they did. Well, Your Honor. I understand you don't like it. And the fact that somebody is doing something nice does not mean that they're evil or they violated some law or constitutional rule if they don't do it. So tell me what rule requires them to tell a person who's not a counsel, on their record, information over the telephone or through a website? Well, Your Honor, I think when an agency sets up procedures, its own internal procedures that are designed to give effect or protect either statutory or constitutional rights, it's obligated to live up to those procedures. If they adopt it as a rule, certainly. If they adopt it as a regulation, certainly. But if they're just following, for example, an internal manual, I seem to recall that manuals don't impose legal obligations on them. So if they have some public information concept and they like to put the information out and they don't do it in this case, tell me a case that says that they have violated some of these constitutional rights because they do not give out information over the telephone. Well, there are cases, Your Honor, that say very clearly that where the proposition that where the agency or the bureau has stepped in between the attorney-client relationship or has somehow. Sure. They've not stepped in between anything. There is no attorney-client relationship as far as their records show. So they're not going to give information to just any old person. Let's say they're not giving out information. They're not going to give it to any old person who calls in on the telephone and they don't know that this person is the attorney or not. So how have they stepped in between the attorney-client relationship? Well, I mean, I guess backing up to what it sounds like you're most concerned with, Your Honor, I think there, you know, there is a provision of law. I believe it's – I'll have to look for the site to make sure. ACFR 100.23 sticks in my mind. I'll check it. That provides that hearings are generally open to the public unless there's a reason to close them. And here there were none of the reasons enumerated in that regulation existed. But we don't know the hearing was closed either. But the question is, if these hearings are open to the public, I don't think this Court is required, as far as I know, that we're required to set up a telephone link so the public can call in and find out when hearings are taking place. I don't think we're required to. We could, but that's the problem here that's facing – that I'm facing. Well, I guess I would say a couple of things in response to that. First is, on a practical level, to the extent that a hearing is required to be open and access to that hearing should be open in the absence of some provision to the contrary or some exception, then access to the information about when the hearing will take place, its date and time, should likewise be accessible to the public. Let me ask you about that part. When I was a district judge, there was a deputy clerk who didn't like lawyers in one of our locations. They would call and ask for some piece of information that was perfectly appropriate for them to ask for. It was public information. It didn't matter if they were somebody's lawyer or the man in the moon. They're entitled. And she'd say, we don't want to be bothered on the phone. If you want to know that, you can come in and look in the file yourself. And even if she knew it, she wouldn't tell them because she didn't want to get calls. I can't see a constitutional violation. All I can see is a nasty clerk. Is this any different from that? Well, Your Honor, I don't think it needs to be a constitutional violation for the purposes of this case. Remember that all we need to have here is a finding that there was an exception – there were some exceptional circumstances that justified the failure to appear in this case. Now, what are the – excuse me. What are the exceptional circumstances beyond your client's post-traumatic stress syndrome, which you suggested was? Is there anything else here that under our case law would amount to an exceptional circumstance? Well, Your Honor, I think that, you know, I think that in the government's brief, you know, what they did is really segregate exceptional circumstances and spoke only in terms of this failure of notice that, you know, was attributable to several things established in the record. The, you know, Mr. Torres-Rivas' post-traumatic stress, the trauma he had suffered and the way it left him. Well, aside from that, was there anything? Well, but I think you have to include within the concept of the exceptional circumstances here both the subsequent failure of counsel to be able to get a hold of this information. You know, the first notice failed. But there's no right to that information. I realize he was in Northern California, and my first thought was why didn't he just go down and find it out? Well, he was not there, but he could have had somebody go find out the information when they didn't give it to him over the phone. It was sort of ludicrous that after they wouldn't give it to him over the phone, they phoned him and asked him why he wasn't at the hearing. But aside from that, I'm trying to think of his legal right here. Well, Your Honor has put your finger on perhaps the other most substantial legal right affected here that constitutes aside from a legal right an exceptional circumstance, and that is Venue. There was a mistake made early on in this process by the immigration court. When he was released from Arizona in custody, Mr. Torres-Rivas made a motion to change Venue to the district where his new address was located. And they changed it to Los Angeles instead of San Francisco. Instead of San Francisco. That's correct, Your Honor. And that mistake in Venue had very real – this is sort of a textbook example of why Venue is so important, and it's important for the reason that you just identified. If this case had been Venued in San Francisco, Mr. Torres-Rivas' prior counsel could have walked down the street with Mr. Torres-Rivas in tow if need be and demanded that he get access to the next hearing date and time. But as it was, he was forced to rely on sort of a tenuous telephone line to Southern California and on the whims of a deputy administrator in the immigration court who notably was willing to confirm for him that indeed an asylum suit hearing had been set, so eliminating any real argument that there was a confidentiality concern. I mean, she had identified Mr. Torres-Rivas as an immigrant, as being subject to the INS's jurisdiction and as having a hearing scheduled, but just refused to disclose the fact that that hearing was two days away. Well, but, you know, again, you're back in the exceptional circumstance. You're back on the same argument. And maybe there's something unusual about it. But as I read exceptional circumstance, it's supposed to be something that's not less serious than the serious illness or death of a spouse, child, et cetera. It's difficult for me to see how failing to give somebody information over a telephone is as serious as the death of my child. Well, I would — state it that way, Your Honor. I wouldn't say that in the abstract, a failure to give a piece of information over the telephone amounts to the death of a spouse. That's what Congress said is our standard. Do you have another angle on this? I mean, it's a really sympathetic case, and that exceptional circumstances rig just isn't that good for you. Well, I do think that, you know, there is underneath all of this a due process claim that really exists by virtue of the couple of mistakes that have been made. That's the problem. He got notice in a hearing. He just didn't bring in all his papers to his lawyer like he should have. Well, Your Honor, we would say that the failure of notice at the outset — What about this rig on that he has the privilege of being represented by counsel so long as the government doesn't have to pay for it? That's — I think it's 13 — oh, it's statute 1362. That is his right to counsel, and that's what we would claim was interfered with when, you know, when there was no reason for the immigration court not to accept, for example, that when this counsel called the immigration court and said, I am Mr. Torres-Rivas' counsel. I need to know his hearing date. We don't know when it is. Why should they accept that? Of course. Why should they accept that? Well, I guess — I mean, I — you know, anybody could call up. Somebody who wants to lay in — find a way for him and kill him could call up and say, I'm his counsel. Give me information. And? I guess — I mean, I guess in response, without being too bold, I guess I would ask why shouldn't they accept that? I think that will come back to the first issue. Was it secret? No. There's no — there's — I mean, I'm thinking if it's public, Al-Qaeda can call in and ask for when — when the hearing date is. But if it's secret, no one can. But there's no — there's nothing in the regs here that implies that the hearing date for an asylum application is to be kept secret. And that was the only information that — Counsel, if I hear you and you're struggling with looking for some concept, is what you're basically — I mean, is the bottom line, you're just saying this was arbitrary and capricious behavior on behalf of the agency and it — and it should not be continence because it's just plain arbitrary and capricious, period, the end? That's — I think that's — that's accurate. That's — that's certainly — it is true that the — that the activity of the agency here was arbitrary and capricious. There's no — there should have been an accommodation to give meaning to his rights accountable to his due process rights. And there was none given. And we think that the circumstances here require reopening his proceedings so that Mr. Torres-Rivas can — Thank you, counsel. Thank you. Counsel? May it please the Court. Good morning. My name is Isaac Campbell and I represent the government in this matter. Your Honor, this is a case in which the petitioner is given proper notice of his immigration hearing. He fails to appear in this file. Counsel, there's a little more to it than that. I mean, this is a case of a deputy clerk who uses Kafka's — the trial as a training manual. Your Honor, respond to that. She says she won't tell him anything about the hearing. He can't know anything about the case. The guy says, I'm his lawyer. I've got to know when the hearing is. And then that afternoon, she calls — she says, why weren't you at the hearing? So obviously it's not secret when the hearing is. She would tell him as even if — even if he has — even if he's not the lawyer. She still doesn't have a notice of appearance when she says, why weren't you at the hearing? Oh, she did. I thought she didn't take the facts. Did she have it by then? She had it by set-up. In this case, and I think it's important also to look at the circumstances prior to the time that he called to show that there were other opportunities beyond just those days that — I think you can tell from our questions, the bottom line is, what is the secret business? It is true that any — I won't say anybody else — that most people's stuff can be found by calling in. Most people's stuff can be found on the website. But this thing is labeled secret, and they won't put it on their magic public stuff, and they won't give it out over the phone. Where does that come from? How does this get labeled secret so that information on this case can't go out? Your Honor, I'm not certain why it was labeled secret, but I think it's important to understand the steps and exactly who said what at that point. What the record shows, and this is what counsel would report had happened. We are not conceding that that, in fact, did happen. But assuming that what counsel represented is, in fact, true, the record evidence shows that counsel attempted to call first the — well, what was then the INS, the service, and was purportedly told that the information would not be given, and that he was directed to call the immigration court. It is, in fact, true that it is not on that. Is that not so? I'm sorry? It is, in fact, true that information on his case is not on that, but if you dial in somebody else's A number, you can get the information. Is that not, in fact, true? Generally, dialing up the A number and putting in information will provide — It is, in fact, true that you can't do that with this particular A number. Is that not right? I'm not sure if, at that point, he could not call. This is what he represented, but I'm not sure that, at that point, it was secret. Let's take that as true. Assuming that it is, according to the record evidence, when he called the number for the INS, he was not given the information, or he was directed to call the immigration court, is what the record evidence shows. Now, as counsel has pointed out, the immigration court has a toll-free number that you can call to obtain that information, because it's important to remember that INS and the service, these are not the same — and the immigration court, these are not the same agencies. At that point, he did not attempt to call the 800 number, or the record does not show that he attempted to obtain that information, that it was somehow secret. What he did was that he called the clerk. At that point, he did not have a Form G28 on file. He was not listed as the attorney of record. He was, you know, he was not calling, saying, I am, you know, the petitioner, the alien, myself, requesting this information. And he was not — Do you have to be the attorney of record? And I'm thinking if he had asked questions about the substance of the case, and it was secret, and we'll leave that aside for the moment. I want to know where in the record it says it's secret. That might be something where the clerk would say, are you the attorney of record? But if what he's asking for is for information that's public, even about a secret case, then I don't see what he would need to be the lawyer for to get it. It seems like since the hearing itself is public, even if it's a secret case, I don't understand why the information about when and where the hearing is is secret. Again, with respect to whether or not the information was given, we're not conceding that that didn't happen. We are not sure that, in fact, that he was told it was secret. Well, counsel, you better concede. If the record says it, it's sworn, and there's no evidence to the contrary. If you want to fight on that ground, you'll go ahead. Well, actually, I don't want to fight on that ground. I'm simply saying that, assuming that that is true. Well, you have to assume it has to do with the record. It will make it real easy to resolve the case if you decide to make that your issue. So that he was not given the information. And assuming, as it has been stated, the court was not under an obligation to provide that information at that point. They have an automated telephone system that the record does not show that Petitioner's counsel attempted to call. The fact that Petitioner was not given the information by telephone did not prejudice the Petitioner in as much as there are two things that are there. First, Petitioner received notice of the calls. At the point Petitioner's counsel had taken the case several days before, had not promptly filed anything with the court to say that this person was the attorney of record to receive such information. The fact that the clerk did not provide that information to the counsel at that point. And the sticking point there seemed to be from the record that she would say that you're not the attorney of record. And that she would not take the FACTS G28 form. There are very many courts that do not accept FACTS documents. That's not something unique to the immigration court. And the fact that counsel did not promptly provide the court with the G28 seemed to be the sticking point. The clerk did not inform the Petitioner that Petitioner's counsel of the hearing date. The Petitioner had notice. And ---- Just out of curiosity, does that particular clerk's office regularly accept FACTSs? And did she just say no to this lawyer? Or does it regularly not accept FACTSs? It's my understanding that the immigration court does not routinely accept FACTSs with respect to obtaining G28 forms. And in Petitioner's counsel, Petitioner's counsel provided to the court as brief as he provided the operating instructions for the service. We said that they would accept FACTS documents, which is separate from the immigration court. And as I stated, there are very many courts that do not accept FACTS documents. At the point end, I think it's also important to understand that for Petitioner to prevail, there are also other standards that Petitioner has not met. Petitioner has to show that the decision, his failure to appear, was somehow an exceptional circumstance. Petitioner ---- Why can't he just skip the exceptional circumstance stuff altogether and instead just go on, I think it's 1362, the person shall have the privilege of being represented at no expense to the government by such counsel? Well, Your Honor ---- And this is an interference with his privilege of being represented by his attorney. Well, Your Honor, because the government didn't interfere with the Petitioner's right to counsel. When Petitioner ---- But wouldn't tell the lawyer when the hearing was. It's hard for the lawyer to show up at the hearing and represent his client if he can't find out when it is. He can't very well go down there because he's 450 miles away. In terms of ---- And they won't tell him. In terms of having notice, the Petitioner received the notice when Petitioner's counsel met with ---- But he can't read English. Although Petitioner could not read English, I think it's important to understand the timeframe before the call. Although Petitioner could not read English, Petitioner voluntarily elected to rely on his cousin. And the record shows the cousin concedes that he has limited ability to read English. The record also reflects that Petitioner's cousin recognized there were additional documents in the packet that he didn't understand, but simply chose not to do anything with them. So Petitioner then went out and got a lawyer, and he ---- the motion for change of venue sent him his case at Los Angeles instead of San Francisco. And he's up in Concord, gets an attorney up in that area, and because there was a mistake in the change of venue, his lawyer has no access to when the hearing date is, and the clerk won't help. And yet we want to hold Petitioner responsible for all of that? Well, Your Honor, I think it's important. I think what is important to hold Petitioner responsible for are those things that were within his control. Certainly, first of all, Petitioner had a choice with whom he voluntarily elected to trust to translate the documents. Yes, but he didn't ---- he wasn't satisfied with that, so he went out and got himself a lawyer. Certainly, Your Honor. Even after that point, Petitioner still had the ---- well, presumably should have still had the additional documents. Once he retained counsel, he could have taken those documents to counsel to say, can you ---- you know, these are the ---- what I've received from the service, and asked help from his counsel. Petitioner's counsel could have also requested from Petitioner, let me see the documents that you have received from the service so that I may check and see what it is that you have. They had several meetings. At no point did Petitioner provide those documents to counsel. At no point did counsel request to see what documents Petitioner had, which would have put him on notice. As Petitioner's present counsel points out, there is an automated telephone line the Immigration Court has that Petitioner failed to utilize. How do we know he failed to utilize it? Well, the record does not reflect that he attempts to utilize that, the automated line from the Immigration Court. In his documentation, he sets out specifically what he did. He states that he attempted to call the service. He was directed to call the Immigration Court. He called the Immigration Court and spoke with the clerk. But there is nothing in the record to establish that he attempted to call the automated line. And certainly assuming that ---- and certainly because Petitioner's former counsel specified all the steps that he took, it's reasonable to conclude that he did not attempt to call that line and was somehow rebuffed or not given that information. Thank you, counsel. We've exhausted our time, but if any of the judges want to ask questions, we'll. Thank you, counsel. Torres-Rivas v. Ashcroft is submitted. Ubala v. Ashcroft submitted. Avendana-Ramirez v. Ashcroft, we heard yesterday. We'll hear Schranth-Blumenbach v. Ashcroft. Thank you.
judges: Dw Nelson, Fernandez, Kleinfeld